## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JOSHUA A. RIVERA,**

      **Petitioner,**

**v.**                                                   **Case No.: 8:21-cv-3001-CEH-UAM**
                                                         **Case No.: 8:15-cr-337-CEH-UAM**

**UNITED STATES OF AMERICA,**

      **Respondent.**
_____/

### ORDER

Joshua A. Rivera[1] moves under 28 U.S.C. § 2255 to vacate her convictions for Hobbs Act robbery, using a firearm during a crime of violence, and possession of a firearm by a convicted felon, for which she serves a 560-month sentence. She challenges her sentence and claims she received ineffective assistance of counsel. And, she proposes an additional challenge to the Court's jury instructions. Rivera is entitled to no relief because her claims are procedurally barred, lack merit, and untimely.

## I.   Background

Rivera was charged with committing a series of armed robberies at convenience stores in June 2015 in the Tampa, Florida area. In a Superseding Indictment, she was charged with: five counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Counts One, Three, Four, Five, and Seven); two counts of using and carrying a

---

[1] Since her trial and appeal, Rivera has come out as transgender and now identifies as a woman. The Court uses her preferred feminine pronouns where possible to avoid confusion with the record.

firearm during and in relation to a crime of violence, specifically the Hobbs Act robberies charged in Counts One and Five, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (1)(B)(i) (Counts Two and Six); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Eight).  (Crim. Doc. 31)  After a four-day jury trial, Rivera was convicted on all counts except for the Hobbs Act robbery charged in Count Four.  (Crim. Doc. 99)

Rivera was sentenced to 560 months, which consisted of: 140 months for the Hobbs Act robberies charged in Counts One, Three, Five, and Seven, to be served concurrently; 120 months for the felon-in-possession offense charged in Count Eight, to be served concurrently with the sentences for the robberies; 120 months for the first § 924(c) offense charged in Count Two, to be served consecutively to the sentences imposed for the robberies and felon-in-possession offense; and 300 months for the second § 924(c) offense charged in Count Six, to be served consecutively to all other sentences.  (Crim. Doc. 133)

Rivera appealed, and the circuit court affirmed her convictions and sentence. *United States v. Rivera*, 824 F. App'x 930, 931 (11th Cir. 2020).

## II.   Discussion

Rivera now seeks to vacate her convictions and claims that: (1) Hobbs Act robbery is not a crime of violence (Grounds One and Four); (2) trial counsel rendered ineffective assistance by not requesting a pretrial mental health evaluation or competency hearing (Ground Two); and (3) the district court erred by not applying § 403 of the First Step Act retroactively (Ground Three).  (Civ. Docs. 16, 17, and 25)

2

Also, Rivera moves to amend her § 2255 motion to add a claim that the Court improperly instructed the jury on the elements of Hobbs Act robbery.  (Civ. Doc. 22) The United States responds that Rivera's claims are procedurally barred and lack merit and that the proposed additional claim is untimely and procedurally defaulted.  (Civ. Docs. 23 and 29)

### A.    Grounds One and Three are procedurally barred and meritless.

Rivera's claims that Hobbs Act robbery is not a crime of violence under § 924(c) (Ground One) and that the Court erred by not applying § 403 of the First Step Act retroactively (Ground Three) are procedurally barred.[2]  "A procedural bar prevents a defendant from raising arguments in a § 2255 proceeding that [she] raised and [the circuit court] rejected on direct appeal."  *Seabrooks v. United States*, 32 F.4th 1375, 1383 (11th Cir. 2022) (citing *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014)).

On direct appeal, Rivera challenged her § 924(c) convictions and argued—as she does here—that Hobbs Act robbery is not a predicate crime of violence.  *Rivera v. United States*, No. 16-15729, 2019 WL 2615659, at *1–2 (11th Cir. June 24, 2019)

---

[2] In Ground Four, Rivera claims that Hobbs Act robbery is not a crime of violence under U.S.S.G. § 2K2.1.  (Civ. Doc. 16 at 8; Civ. Doc. 25 at 13–14)  However, she neglects to argue that the advisory sentencing guidelines were improperly applied to calculate her sentence, and therefore, this cursory claim is not properly before the Court.  *See Walker v. Dugger*, 860 F.2d 1010, 1011 (11th Cir. 1988) (claims raised only superficially will not be treated as properly raised). Nevertheless, construing Rivera's filings generously, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), the argument she purports to present in Ground Four appears to be a repetition of the claim in Ground One, which is procedurally barred and meritless. Alternatively, to the extent she claims an error in the sentencing guidelines calculation, such claim is not cognizable. *See Spencer v. United States*, 773 F.3d 1132, 1138–40 (11th Cir. 2014) (*en banc*) (allegations about sentencing guidelines calculations are not cognizable on collateral review).

(initial brief of appellant).   The Eleventh Circuit explicitly rejected that challenge, ruling that it was "foreclosed by circuit precedent." *Rivera*, 824 F. App'x at 935 (citing *United States v. St. Hubert*, 909 F.3d 335, 346 (11th Cir. 2018) ("Hobbs Act robbery is categorically a crime of violence under the use-of-force clause in § 924(c)(3)(A)."), *abrogated in part on other grounds by United States v. Davis*, 139 S. Ct. 2319 (2019)). Additionally, Rivera argued on direct appeal that the Court erred by not applying § 403 of the First Step Act retroactively.  *Rivera*, 2019 WL 2615659, at *42 (initial brief of appellant).  The Eleventh Circuit rejected that argument, again ruling that "circuit precedent forecloses her argument." *Rivera*, 824 F. App'x at 936.

"Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000).  Because the claims presented in Grounds One and Three were resolved against Rivera on direct appeal, the claims are procedurally barred. *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994) (concluding that the "district court properly refused to substantively address the [§ 2255 petitioner's] remaining contentions" that the appellate court "already rejected"); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981) ("This Court is not required on § 2255 motions to reconsider claims of error raised and disposed of on direct appeal.").

And, even if these claims were not procedurally barred, they lack merit.  *See United States v. Brinson*, No. 23-10674, 2024 WL 3548883, at *1 (11th Cir. July 26, 2024) (reaffirming *St. Hubert* and *In re Fleur*, 824 F.3d 1337, 1339–40 (11th Cir. 2016),

4

that Hobbs Act robbery qualifies as a predicate crime of violence under § 924(c));
*United States v. Wiley*, 78 F.4th 1355, 1365 (11th Cir. 2023) ("*Taylor* did not disturb our
holding that completed Hobbs Act robbery qualifies as a crime of violence under §
924(c)(3)(A)."); *United States v. Pearson*, No. 22-12447, 2023 WL 2565096, at *2 (11th
Cir. Mar. 20, 2023) ("[Section] 403 [of the First Step Act] does not apply
retroactively.").

## B.     Ground Two lacks merit.

Rivera claims that trial counsel rendered ineffective assistance by not requesting
a pretrial mental health evaluation or competency hearing.[3]  (Civ. Doc. 16 at 5; Civ.
Doc. 17 at 4–15)

### 1.     Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel is the right to effective assistance of
counsel.  *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  "When a convicted
defendant complains of the ineffectiveness of counsel's assistance, the defendant must
show that counsel's representation fell below an objective standard of reasonableness."
*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Because a lawyer is presumed
to be competent to assist a defendant, the burden is on the petitioner to demonstrate
that he was denied the effective assistance of counsel.  *United States v. Cronic*, 466 U.S.
648, 658 (1984).

---

[3] Rivera raised this claim on direct appeal.  However, the Eleventh Circuit declined to consider
it, concluding "this is not a rare case where the record is sufficiently developed to decide
claims of ineffective assistance on direct appeal."  *Rivera*, 824 F. App'x at 937.

To prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's representation fell below an objective standard of reasonable professional assistance; and (2) the petitioner was prejudiced by that deficient performance. *Strickland*, 466 U.S. at 693-94. To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*). When evaluating performance, the district court must apply a strong presumption that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 2004).

### 2.   Failure to Request Mental Health Evaluation or Competency Hearing

"The Due Process Clause of the Fifth Amendment prohibits the government from trying a defendant who is incompetent[,]" and "[t]his right extends to sentencing." *Perkins v. United States*, 73 F.4th 866, 876 (11th Cir. 2023) (citations omitted). A petitioner "is entitled to no presumption of incompetency and must demonstrate his [or her] incompetency by a preponderance of the evidence." *Lawrence v. Sec'y Fla. Dep't of Corr.*, 700 F.3d 464, 481 (11th Cir. 2012). "[T]he standard of proof

is high," and the facts must "positively, unequivocally and clearly generate [a] legitimate doubt [regarding the defendant's competency]." *Card v. Singletary*, 981 F.2d 481, 484 (11th Cir. 1992) (quotation omitted).   To determine a defendant's competency, the Court asks "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995) (quotation omitted).

"Not every manifestation of mental illness demonstrates" that the defendant is incompetent; "rather, the evidence must indicate a present inability to assist counsel or understand the charges" at the time of the relevant proceeding, such as trial or sentencing.   *Battle v. United States*, 419 F.3d 1292, 1299–1300 (11th Cir. 2005) (concluding that the defendant's "courtroom outbursts, odd behavior, and history of mental illness [did not] mandate a finding of incompetency").   "Likewise, neither low intelligence nor mental deficiency can be equated with mental incompetence." *Perkins*, 73 F.4th at 876.   "The fact that a petitioner was prescribed psychiatric drugs, standing alone, does not raise a bona fide doubt as to his [or her] competence to stand trial." *Id*. (citation omitted)

To determine whether counsel rendered ineffective assistance by not obtaining a mental health evaluation or competency hearing, the Court considers whether "a reasonable attorney should have been on notice that a psychological examination of [the defendant] was needed to assess his competency to stand trial[.]"   *See Devier v. Zant*, 3 F.3d 1445, 1451 (11th Cir. 1993).   Counsel's "decision not to pursue a claim

of incompetency does not amount to prejudice unless a petitioner can raise a real, substantial, and legitimate doubt as to his [or her] mental competency at the time of trial." *Dickerson v. United States*, No. 21-14226, 2022 WL 17660314, at \*2 (11th Cir. Dec. 14, 2022) (citing *Adams v. Wainwright*, 764 F.2d 1356, 1367 (11th Cir. 1985)). Evidence of incompetence "must indicate a present inability to assist counsel or understand the charges." *Medina*, 59 F.3d at 1107. "Absent evidence of such an inability [to assist counsel or understand the charges], evidence of low intelligence, mental deficiency, bizarre, volatile, or irrational behavior, or the use of anti-psychotic drugs is not sufficient to show incompetence to stand trial." *Pardo v. Sec'y, Fla. Dep't of Corr.*, 587 F.3d 1093, 1101 (11th Cir. 2009).

"[U]nder certain circumstances, trial counsel's failure to apprise the court of a client's changing mental state—thereby depriving the court of critical information regarding its own potential duty to hold a [competency] hearing—can constitute ineffective assistance." *Johnston v. Singletary*, 162 F.3d 630, 635 (11th Cir. 1998). "To establish deficient performance in this context, a defendant must show that his counsel failed to bring 'information raising a *bona fide* doubt regarding his competency' to the trial court's attention when every reasonable attorney would have done so." *Perkins*, 73 F.4th at 880 (emphasis in original). "Further, to establish prejudice, [the petitioner] must show that 'there was a reasonable probability that he would have received a competency hearing *and* been found incompetent had counsel requested the hearing." *Id.* (quoting *Lawrence*, 700 F.3d at 479) (emphasis in original).

Rivera faults counsel for not requesting a mental health evaluation or competency hearing despite "strong evidence" that she "may be incompetent to stand trial." (Civ. Doc. 17 at 9)  She claims that, despite being "keenly aware that [she] suffered from serious mental health issues," counsel neglected to raise the competency issue until sentencing. (*Id.* at 11)  She argues that counsel should have sought a mental health evaluation given "the apparent mental health concerns [she] exhibited." (*Id.* at 13)  Rivera points to counsel's sentencing memorandum and the presentence report, both of which document her history of mental health issues.

In her responsive affidavit, counsel acknowledges that Rivera informed her at their first meeting of her history of mental health issues.  However, according to counsel, Rivera appeared competent throughout the prosecution and actively assisted in her defense (Civ. Doc. 23-4 at 3–6)[4]:

> 6. On or about August 18, 2015, I met with Mr. Rivera at the Pinellas County jail. During that meeting, he stated he suffers from ADD/ADHD, Bipolar and Schizophrenia.  He also stated he is receiving medications at the jail, so he is stable. . . .

> 8. Throughout my representation of Mr. Rivera, I met with him in person at the jail and spoke with him on the telephone. Additionally, I requested records from numerous sources regarding Mr. Rivera's mental health and medical background.

> 9. At no time during any contact with Mr. Rivera did it appear to me that he did not understand the nature of the charges. Mr. Rivera and I discussed his case and the facts in detail and the possible penalties associated with the charges. He appeared competent and readily assisted me in preparing his defense.

---

[4] Counsel uses masculine pronouns to refer to Rivera. To avoid confusion, the Court quotes counsel's affidavit.

10. Early in the case, Mr. Rivera requested that I file a Motion to Suppress. In fact, when meeting with him on September 2, 2015, Mr. Rivera supplied me with case law he believed would assist in a Motion to Suppress. . . .

11. When additional discovery was disclosed by the government, my investigator and I both reviewed it with Mr. Rivera. Again, he appeared to understand the evidence against him and offered various theories of defense.

12. Prior to trial, I reviewed Mr. Rivera's school and social security records. . . . Although Mr. Rivera had documented mental health issues, it did not appear to me he was suffering from a mental health defect during the time of my representation.

13. I also listened to jail calls Mr. Rivera had with his girlfriend. Those conversations did not lead me to believe he was suffering from a mental health issue before or during the time of my representation. . . .

17. In preparing for sentencing, I reviewed Mr. Rivera's mental health records and the presentence report. I filed a Motion for Downward Variance and Sentencing Memorandum on August 15, 2016. Attached to the memo was a mental health evaluation that was prepared approximately six (6) months prior to the date(s) of offense(s) in this matter. There was no information in the report that indicated he was incompetent. . . .

18. At sentencing, I also presented to the Court a video of Mr. Rivera "rapping" about his life and hardships. Mr. Rivera wrote the lyrics to the rap song. . . .

20. On August 20, 2017, Mr. Rivera wrote me a letter requesting copies of his sentencing transcripts where he noted, "[n]o real hard feelings towards you loosing [sic] my suppression hearing and trial."

Here, the record shows conclusively that Rivera is entitled to no relief on this claim because she fails to allege facts, accepted as true and liberally construed, that would entitle her to relief.  *See* 28 U.S.C. § 2255(b).  Rivera neglects to point to any portion of the record during the pretrial or trial proceedings that indicates her mental illness, incompetency, or dissatisfaction with counsel's performance.  In fact, during a

status conference on the eve of trial, Rivera demonstrated her understanding of the proceedings when she explained to the magistrate judge her decision to reject a plea offer and proceed to trial (Crim. Doc. 141 at 6–7):

> COURT:     . . . [Y]ou're aware Judge Honeywell denied the motion to suppress, so what evidence that was challenged there is now going to come in under her ruling. If you go to trial and lose, you're looking at a significantly higher sentence. A lot of mandatories built into the punishment based on the way they have got it charged, so it could be a significantly higher hit. You understand that?
>
> RIVERA:     Yes, sir.
>
> COURT:     Do you have any questions about this? . . . I think that you can be assured that if you were going to plea, the agreed upon sentence for 25 years would be a part of that. But in any event do you have any questions about going forward here as to what you should do?
>
> RIVERA:     The only thing that I was concerned—well, the reason why we're here today is because I've asked for anywhere between a range from 15 to 20 years and then I would sign today and be out of your hair. But 25 years is—I was just like I'm already looking at—already looking at basically the rest of it, 25 years is a lot. As to 15 to 20 and I'll be out of your hair today, I'll sign tonight. But 25 years, we're going to run into trial.
>
> . . .
> COURT:     So what I'm hearing you say is if they want 25 years, they have got to earn it at a trial, right?
>
> RIVERA:     Yes, sir.

When the magistrate judge explained she would return for trial the following Monday morning, Rivera responded, "I'm ready for trial." (*Id.* at 9) Furthermore, on the third day of trial, when explaining her decision not to testify, Rivera expressed to the Court her satisfaction with counsel's representation: "[Counsel's] done a very good job. I'm not disappointed with anything she's done. She's done a tremendous job in my case.

11

So, I'm not doubting her and her judgment going forward[;]", and "As far as defending, [counsel] has done a tremendous job." (Crim. Doc. 168 at 209–10)

The first reference to Rivera's mental health appears at the sentencing phase. In Rivera's sentencing memorandum and motion for downward variance, counsel urged the Court to vary downward from the guidelines range due to Rivera's history of childhood abuse, drug use, and mental illness. (Crim. Doc. 124) Counsel detailed the childhood abuse Rivera experienced and reported that Rivera suffered from ADHD, bi-polar disorder, and schizophrenia, had attempted suicide, and was once Baker Acted. (*Id.* at 3–5) Counsel cited a mental health evaluation, that was conducted in 2015, six months before the offense conduct, for the purpose of determining Rivera's eligibility for social security benefits. (*Id.*) Attached to the sentencing memorandum, the evaluation states that Rivera "presented with severe psychomotor agitation" and was experiencing auditory hallucinations. (*Id.* at 12) The psychologist conducting that evaluation diagnosed Rivera with bipolar disorder and ADHD. (*Id.* at 13)

At the sentencing hearing, counsel repeated this argument to the Court. Counsel summarized Rivera's history of mental illness in this manner (Crim. Doc. 150 at 13–17):

> In his early years his mother, his teachers, family members observed violent rages by Mr. Rivera at the age of seven. He started getting into a lot of trouble in school and he was started on psychiatric medication at an early age. He ran away from home not once, not twice, but many, many times, not only because of the abuse that occurred in the home but because of the mental health issues he was facing. He started smoking marijuana at early age of nine and he was fully addicted by age fourteen. . . .

> In his teenage years his drug use escalated, his mental health worsened. He was not medication compliant and his anger and rage increased and that was a time that he dropped out of the school and because of his drug use and his mental health he started having hallucinations. . . .
>
> And I just wanted to just describe the various mental health conditions he suffers . . . the attention deficit hyperactivity disorder. He has problems paying attention, difficulty controlling his behavior, bipolar disorder. He has periods of depression and periods of elevated moods. He's been diagnosed as schizophrenic. He has false beliefs, confused thinking. He hears voices and a complete lack of motivation. Finally, your Honor, his post-traumatic stress disorder from his many years of abuse is very, very significant. . . .

Counsel commented that Rivera "was not medicated during that trial and it was just very difficult for him to sit through that." (*Id*. at 12)  Furthermore, counsel explained that Rivera was unable to get necessary medications while incarcerated (*Id*. at 17–18):

> [Rivera] has serious mental health conditions. But, your Honor, he has expressed to me that he wants to get better. We have actually been kind of going through it with Citrus to get him back on the medications that he has been taking that he knows helps him.
>
> When he was in prison in Georgia, he was taking quite a few medications and I had faxed over those documents but he never got the medications that he needs, and he knows that he must stay diligent with those medications and, you know, again back to when he was imprisoned in Georgia, he was getting, you know, specific regimen of medicines and he felt good and he was motivated to be released and do better.

The presentence report similarly documented Rivera's prior diagnoses of ADHD, bipolar disorder, schizophrenia, and post-traumatic stress disorder.  (Crim. Doc. 122 at ¶¶ 90 and 104–108) Citing Rivera's abusive childhood, mental health issues, and

lack of treatment for the mental health issues, the Court imposed a sentence at the low end of the guidelines range. (Crim. Doc. 150 at 30–31)

Rivera fails to show that no competent counsel would have failed to request a pretrial mental health evaluation or competency hearing, and instead, raised the issue of mental illness at sentencing. Counsel acknowledges having knowledge of Rivera's history of mental illness before trial; however, the fact that she suffered from mental illness does not raise a bona fide doubt that she lacked the ability to assist counsel or understand the proceedings. In fact, at a pretrial status conference Rivera herself explained to the magistrate judge her decision to proceed to trial and expressed her readiness for trial. And during trial, Rivera expressed to the Court her satisfaction with counsel's performance.

At sentencing, counsel reported that Rivera was not medicated and had difficulty sitting through the trial. However, the fact that Rivera was unmedicated and had trouble enduring the trial does not raise a bona fide doubt that she was able to assist counsel and understand the proceedings against her. Rivera simply argues that counsel should have raised the competency issue because counsel knew she had a history of mental illness, was unmedicated, and had trouble enduring the trial. But, she fails to point to any record evidence indicating her inability to assist counsel or understand the proceedings. *See Fallada v. Dugger*, 819 F.2d 1564, 1569 (11th Cir. 1987) ("The standard for determining whether a competency hearing is necessary remains the same regardless of whether the defendant is receiving medication."); *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 478 (11th Cir. 2012) (concluding that

counsel's decision not to request a competency hearing was not deficient when "neither counsel testified . . . that [the defendant] was ever unable to communicate with [counsel] or assist [counsel] in his defense").

Rivera also fails to show she was prejudiced by counsel's decision not to raise the competency issue pretrial and instead to raise the issue of mental illness at sentencing. Again, the record contains no indication that she lacked a present ability to assist counsel or understand the proceedings, despite her history of mental illness. "While a diagnosis of depressive type psychosis might suggest that [a defendant] was suffering from a mental illness that *could have* impaired [her] competency, [the defendant] has pointed to no evidence that this illness did, in fact, render [her] incompetent[.]" *Perkins*, 73 F.4th at 882. Rivera fails to demonstrate a reasonable probability that she would have both received a competency hearing and been found incompetent if counsel raised the competency issue.

### D.    Rivera's Motion to Amend

On July 12, 2023, Rivera filed a "Pro Se Request to Amend Argument Relating Back to Pending Claim Pursuant to Federal Rule of Civil Procedure Rule 15(c)." (Civ. Doc. 22) She argues that the Court gave an overly broad jury instruction about the elements of Hobbs Act robbery, which led to the jury to convict her of a nonexistent offense. The United States responds that the proposed supplemental claim is untimely because it does not relate back to a claim in her original § 2255 motion. (Civ. Doc. 23 at 6–8; Civ. Doc. 29) Alternatively, the United States argues that Rivera procedurally defaulted her proposed supplemental claim.

15

Rivera's judgment of conviction became final on February 1, 2021, when the time for seeking certiorari review expired.  *See Kaufmann v. United States*, 282 F.3d 1336, 1338 (11th Cir. 2002) (if prisoner does not petition for certiorari, conviction becomes final upon expiration of period for seeking certiorari).  Under 28 U.S.C. § 2255(f)(1), Rivera had until February 1, 2022, to file her § 2255 motion.  She timely filed her initial motion on December 13, 2021.[5]  (Civ. Doc. 1)

 "When a prisoner amends [her] section 2255 motion after the expiration of AEDPA's one-year limitation period, claims in the amended motion are time-barred, unless the claim 'relates back' to a claim in the original, timely-filed motion."  *Chin v. United States*, 853 F. App'x 640, 644 (11th Cir. 2021) (citing *Davenport*, 217 F.3d at 1344).  "Under Rule 15(c), an amended pleading 'relates back' to the original pleading if the amended claim 'arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'"  *Id.* (quoting Fed. R. Civ. P. 15(c)(1)(B)).

"Congress intended Rule 15(c) to be used for a relatively narrow purpose."  *Pruitt v. United States*, 274 F.3d 1315, 1318 (11th Cir. 2001).  To determine whether a claim relates back in the context of a petition for post-conviction relief, the Court considers whether, *Chin*, 853 F. App'x at 644:

---

[5] Rivera proceeds in this action on her Second Amended § 2255 motion.  (Civ. Doc. 16)  The Court dismissed as moot her original and first amended § 2255 motions.  (Civ. Doc. 18)  The Second Amended § 2255 motion was filed January 12, 2023, beyond the one-year statute of limitations.  However, because the claims contained in the Second Amended § 2255 motion restate the claims contained in the timely-filed original § 2255 motion, those claims are timely.  *See Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).

"the existence of a common 'core of operative facts' united the original and newly asserted claims." *Mayle* [*v. Felix*, 545 U.S. 644, 659 (2005))]. Habeas petitions are subject to a more demanding pleading standard than ordinary civil complaints; the Supreme Court has cautioned against applying Rule 15(c)'s "conduct, transaction, or occurrence" language at too high a level of generality. *See id.* at 661, 125 S.Ct. 2562; 655–56 (noting that petitioners seeking post-conviction relief must "specify all the grounds for relief available" and "state the facts supporting each ground"; "each separate congeries of facts supporting the grounds for relief . . . would delineate an "occurrence."

An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650, 125 S.Ct. 2562. That an amended claim arises from the same trial and conviction is not enough to satisfy the "relate back" standard. *Id.*; *Davenport*, 217 F.3d at 1344.

Rivera's operative § 2255 motion asserts three claims: that Hobbs Act robbery is not a predicate crime of violence, that the Court erred in applying § 403 of the First Step Act retroactively, and that counsel was ineffective for not requesting a mental health evaluation or competency hearing. In her motion to amend, Rivera now proposes one claim that the Court erred in instructing the jury on the Hobbs Act robbery offenses.

Rivera's proposed claim "[is] too far removed from [her] original claims to 'relate back.'" *See Pruitt*, 274 F.3d at 1319. Her operative motion claims that Hobbs Act robbery is not a predicate crime of violence and raises sentencing errors and ineffective assistance of counsel, while her proposed claim challenges the Court's jury instructions. Rivera's operative motion contains no allegations about the Court's jury

instructions.  The proposed claim asserts a "new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Mayle*, 545 U.S. at 650; *see also Dean v. United States*, 278 F.3d 1218, 1221 (11th Cir. 2002) ("While Rule 15(c) contemplates that parties may correct technical deficiencies or expand facts alleged in the original pleading, it does not permit an entirely different transaction to be alleged by amendment.").  Her proposed claim does not relate back to her operative § 2255 motion and is therefore untimely.  *See Pruitt*, 274 F. 3d at 1319 (concluding that the petitioner's proposed claims of ineffective assistance and prosecutorial misconduct were "so far removed from his original claims [of sentencing errors] that allowing them would effectively require the government to prepare its case a second time").

Finally, even if Rivera's proposed claim was timely, the claim lacks merit.[6]  At trial, both the United States and Rivera proposed that the Court instruct the jury with the Eleventh Circuit Pattern Jury Instruction 70.3 for Hobbs Act robbery.  (Crim. Doc. 63 at 50–52; Crim. Doc. 69 at 46–48)  The Court instructed the jury with the pattern instruction without alteration.  (Crim. Doc. 100 at 15–16; Crim. Doc. 168 at 49–50)

---

[6] The United States argues, and the Court agrees, that Rivera procedurally defaulted her proposed claim challenging the Hobbs Act robbery jury instruction when she failed to raise the issue at trial or direct appeal.  (Civ. Doc. 23 at 9–12; Civ. Doc. 29)  Additionally, the Court rejects the claim as untimely and meritless.  *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."); *Garrison v. United States*, 73 F.4th 1354,1359 n.9 (11th Cir. 2023) (same).

To convict Rivera of Hobbs Act robbery, the United States had to prove that she "took the property against the victim's will, by using actual or threatened force, or violence, or causing the victim to fear harm, either immediately or in the future[.]" (Crim. Doc. 100 at 15, Court's Instructions to the Jury)  "'Fear' means a state of anxious concern, alarm, or anticipation of harm.  It includes the fear of financial loss as well as fear of physical violence." (*Id.*)

Relying on an unpublished decision issued by a district court in the Southern District of Florida, Rivera now argues that pattern jury instruction is overbroad because the "fear of financial loss" language improperly expands the elements of § 924(c)'s crime of violence to include both fear of financial loss and fear of physical violence.  (Civ. Doc. 22 at 3, citing *See United States v. Louis*, No. 21-cr-20252-KMW, 2023 WL 2240544 (S.D. Fla. Feb. 27, 2023) (granting a post-trial motion to arrest judgment and dismissing § 924(c) counts for lack of jurisdiction))  However, in *United States v. Natson*, No. 23-12680, 2024 WL 1829096, at *4 (11th Cir. Apr. 26, 2024) (unpublished), a panel of the Eleventh Circuit rejected the argument that Rivera pursues here: that "the pattern jury instruction for Hobbs Act robbery is categorically overbroad as it allows the jury to convict . . . based on mere fear of financial loss, which would remove the Hobbs Act robbery predicate from § 924(c)'s 'crime of violence' definition."  The panel specifically rejected Natson's reliance on *Louis*, reasoning "the *Louis* court's determination is entirely conclusory and finds no support in the law."  *Id.* at n.5.

Rivera presents no binding authority to support her proposed claim that the Eleventh Circuit Pattern Jury Instruction 70.3 for Hobbs Act robbery is overbroad. And, the *Louis* decision on which Rivera relies has been discredited by a panel of the Eleventh Circuit. Consequently, her proposed claim lacks merit.

## III.   Conclusion

Rivera's motion under 28 U.S.C. § 2255 (Civ. Doc. 16) is **DENIED**.   And, her motion to amend (Civ. Doc. 22) is **DENIED**. The Clerk is directed to enter judgment against Rivera, terminate any pending motions, close this case, and enter a copy of this order in the criminal action.

Rivera is not entitled to a certificate of appealability. To obtain a certificate of appealability, the petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues she seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because Rivera fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, she is not entitled to a certificate of appealability or to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, this 16th day of September, 2024.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Pro Se Petitioner
Counsel of Record

20